FILED
01 OCT -5 PM 2: 14
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
OCT - 5 2001

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

LOUISE GALBREATH,            }
                             }
        Plaintiff,            }
                             }
v.                           }      CV 00-AR-3156-M
                             }
MICHAEL L. HARDEN, et al.,   }
                             }
        Defendants.           }

**MEMORANDUM OPINION**

Presently before the court are opposing motions for summary judgment filed by plaintiff, Louise Galbreath ("Galbreath"), and by defendants, Michael Harden and Frank Sullender, doing business as Stitch Tech Enterprises, LLC and as Embroidery Tech (hereinafter referred to as "Harden and Sullender"). For the reasons set forth below, the motion of Harden and Sullender is due to be granted, and the motion of Galbreath is due to be denied.

I.    UNDISPUTED MATERIAL FACTS

Galbreath, proceeding *pro se*, filed suit against Harden and Sullender in November 2000, asserting claims for copyright infringement, trademark infringement, and unfair competition. Her claims are based upon literary works such as labels, brochures, and circulars for which she received copyright protection and for which she sought trademark protection. These literary materials were used to advertise a pre-wound, disposable bobbin marketed and sold by her and Sew Fast Products, Inc., the

company where she formerly served as President, marketed and sold. In the copyright applications regarding the advertisements, Galbreath stated that her works were created in 1989, and were published for the first time in January 1989. The term "parallel wind," for which Galbreath sought the trademark, was used for the first time in a circular in 1955. The following language appeared in the advertisements and are the sources of the alleged copyright infringement for which Galbreath now seeks redress:

- Parallel wind.
- "Parallel wind" will always give smooth, trouble-free stitching.
- "No fuzz or lint-wax buildup" in bobbin case.
- No jerks or jamming from distorted flanges.
- No distorted flanges due to humidity or oiling.
- Less down time, more profit.

Harden and Sullender are national sales representatives for National Embroidery Bobbin. Galbreath claims that in 1999 and 2000, Harden and Sullender began utilizing advertisement brochures, circulars, and labels that violated Galbreath's copyrights. Their written materials advertised bobbins that were manufactured and sold by National Embroidery Bobbin and that allegedly resembled those sold by Galbreath and Sew Fast. On behalf of Stitch Tech Enterprises, Harden and Sullender published

various advertisements that contained either the exact phrases from or phrases similar to those contained in the advertisements allegedly copyrighted by Galbreath.

In November 1996, Galbreath filed a personal Chapter 7 bankruptcy.  As required by the Bankruptcy Code, Galbreath submitted a sworn schedule which was supposed to list all assets owned by her.  The schedule form specifically sought to ascertain whether a debtor possesses trademarks, copyrights, contingent and unliquidated claims, equitable and future interests, and other general intangibles.  Galbreath stated in her schedule that she possessed "none" of the aforementioned assets.  The bankruptcy trustee subsequently filed a "no assets" report, and Galbreath was granted a Chapter 7 discharge on February 22, 1997.  Upon notifying the Chapter 7 trustee in May 1999, of her alleged copyrights, trademarks, and other related claims and of her desire to pursue copyright and trademark claims against various individuals, the trustee abandoned such claims, deciding not to pursue them.

Galbreath has filed multiple lawsuits--specifically eleven-- in the United States District Court for the Northern District of Alabama, asserting variations on the copyright and trademark infringement claims made in this case.  In two of these cases, *Galbreath v. Hamlet*, CV-97-S-3051-M, and *Galbreath v. Hamlet*, CV-00-C-3153-M, Galbreath asserted copyright infringement, trademark

3

infringement, and unfair competition claims that are virtually identical to those involved in the case at hand. And in those cases, Judge Smith and Judge Clemon, respectively, granted summary judgment for the defendants. In so ordering, the judges found that Galbreath was judicially estopped from asserting her copyright and trademark infringement claims because she failed to disclose the copyrights and trademark as assets in her Chapter 7 bankruptcy case. In an unpublished opinion, the Eleventh Circuit Court of Appeals affirmed Judge Smith's decision. *Galbreath v. Hamlet*, 199 F.3d 442 (11th Cir. 1999).

In *Galbreath v. Majors*, CV-97-AR-3203-M, this court also had an opportunity to address similar claims of patent infringement and unfair competition by Galbreath. In that action, this court granted summary judgment for the defendants, finding that Galbreath lacked standing to pursue her claims, that Galbreath had a duty to disclose her interest in the patent and the contingent patent claims, that the non-disclosure of her patent-related claims was undertaken in bad faith, and that she was accordingly judicially estopped from pursuing such claims should the bankruptcy trustee abandon the claims.

## II. ANALYSIS

In her response to an order to show cause why her present complaint should not be dismissed, Galbreath states, "Plaintiff

is not a person to give up easily.  Plaintiff was taught that 'If [sic] at first you don't succed [sic], try, try again.' which [sic] Plaintiff has done all her life."  And Galbreath has tried **unsuccessfully** to put forth some variation of a claim relating to her pre-wound, disposable bobbins **eleven times.**

Although multiple legal theories are argued in the motions for summary judgment and the accompanying memoranda of law filed in the instant action, and although most, if not all, of the arguments of Harden and Sullender could serve as a foundation upon which to grant defendants' motion for summary judgment, this court will not address defendants' theories because, in Galbreath's eleven attempts to co-opt the legal system to "try, try again" to pursue the persons who have had the misfortune of dealing with Galbreath and her pre-wound, disposable bobbins, these theories have already been addressed more than sufficiently.  Thus, in order to expend no more judicial resources than absolutely necessary, and hopefully and ultimately to dispose of Galbreath's claims, this court limits itself to a holding that the copyright and trademark infringement claims asserted by Galbreath are barred by the doctrine of judicial estoppel and that her unfair competition claim must likewise fail.

Under the doctrine of judicial estoppel, a "party is estopped from asserting a position in the present proceeding

5

'merely by the fact of having alleged or admitted in his pleadings in a former proceeding under oath' an allegation to the contrary." *Sumner v. Michelin North America, Inc.*, 966 F. Supp. 1567, 1577 (M.D. Ala. 1997) (quoting *Bregman v. Alderman*, 955 F.2d 660, 664 n.3 (11th Cir. 1992)). Judicial estoppel is to be "applied to the calculated assertion of divergent sworn positions;" it is "designed to prevent parties from making a mockery of justice by inconsistent pleadings" and to prevent "a litigant from playing fast and loose with the courts." *American National Bank of Jacksonville v. Federal Deposit Insurance Corp.*, 710 F.2d 1528, 1536 (11th Cir. 1983) (internal citations omitted); *Sumner*, 966 F. Supp. at 1571 (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)). Judicial estoppel works to prevent a party from "gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Sumner*, 966 F. Supp. at 1571 (quoting *Helfand v. Gerson*, 105 F.3d 530, 534 (9th Cir. 1997)).

For judicial estoppel to apply, it must be determined that "(1) the positions asserted are in fact inconsistent, and (2) the inconsistency would allow a party to benefit from deliberate manipulation of the courts." *Chandler v. Samford University*, 35 F. Supp. 2d 861, 863 (N.D. Ala. 1999).

Courts of various jurisdictions have held that the attempted prosecution of legal claims whose existence was not disclosed in

6

an earlier bankruptcy proceeding constitutes the assertion of inconsistent positions. *Chandler*, 35 F. Supp. 2d at 863 (string cite omitted). There can be no doubt that the court is now confronted by a substantial and irreconcilable inconsistency. In 1996, Galbreath stated in the schedule of assets that accompanied her Chapter 7 petition that she owned no copyrights, trademarks, contingent claims, equitable or future interests, or other general intangibles; yet in 2000, she asserts that she has used the slogans and phrases that substantiate her trademark claim since 1955, and that she first used the literary materials that support her copyright claim in 1989. Thus, if Galbreath now has any rights to copyright or trademark protection, such rights also existed at the time she filed for bankruptcy. Galbreath cannot escape the inconsistent web of claims she has woven throughout her "tenure" as a plaintiff and/or debtor.

An application of judicial estoppel is not proper merely because a party pled inconsistently in two different proceedings. Also, in determining whether to apply the doctrine of judicial estoppel, a court must consider whether the party is engaging in "'cold manipulation and not an unthinking or confused blunder.'" *Sumner*, 966 F. Supp. at 1578 (quoting *Johnson Serv. Co. v. Transamerica Ins. Co.*, 485 F.2d 164, 175 (5th Cir. 1973)). In the context of bankruptcy, where debtors are required to affirmatively disclose all legal or equitable property interests

7

to the bankruptcy court, "sufficient evidence of intent to manipulate the judicial system" can be found when the party knows of her claim and has a motive to conceal her claim. *Chandler*, 35 F. Supp. 2d at 864. *See also* 11 U.S.C. § 521(a).

Evidence of deliberate manipulation is so overwhelming in the case at hand that it reaches "undisputed" status. A mere disclaimer of the obvious does not create a controversy involving a credibility determination. Galbreath began using the phrase on which she bases her trademark infringement claim as early as 1955. She commenced use of the advertising materials upon which she bases her copyright infringement claims in 1989. Galbreath believed, by her own admission in her reply to the order to show cause why her complaint should not be dismissed, in February 1995, that rivals, the owners of National Embroidery Bobbin and National Embroidery Supply, were using advertisements that infringed her copyrights. Consequently, in November 1996, when Galbreath filed her Chapter 7 bankruptcy petition, she believed she possessed copyrights and/or trademarks, and she believed, just as much as she now believes, that those copyrights were being infringed. She cannot now be heard to claim that she was not aware of the copyrights and the claims related thereto when she filed her bankruptcy petition. She cannot now be heard to claim that she was merely mistaken or confused when she did not disclose these claims. The schedule **specifically required** her to

8

report whether she possessed copyrights and other intangibles, contingent claims, and equitable and future interests. Galbreath, who considers herself an experienced, if unsuccessful, litigant, fully comprehended the significance of the language contained in the bankruptcy schedule.

Furthermore, this court easily ascertains that Galbreath had a motive for failing to disclose her copyrights, trademark, and related claims. There is no real dispute about it. After reviewing the schedules filed with the bankruptcy petition, the trustee determined that Galbreath's case was a "no asset" case. This court has in another case found that such action by a trustee "may have contributed to the choice made by the parties in interest not to raise objections to the proposed administration of [the debtor's] bankruptcy estate." *Chandler*, 35 F. Supp. 2d at 865. Furthermore, when the court considers that Galbreath's bankruptcy petition was filed primarily in response to a judgment obtained against her by her aforementioned rivals, the persons affiliated with National Embroidery Bobbin and National Embroidery Supply, and that she sought a discharge of that debt while operating with the knowledge that those rivals were allegedly infringing her copyrights, it is clear that Galbreath had a motive for concealing the various copyright and trademark infringement claims.

Having pointed out that Galbreath has pled inconsistent

positions in her bankruptcy petition and in this action, that she knew of the facts giving rise to the inconsistent positions when she filed her bankruptcy petition, and that she had a motive to conceal her claims for copyright and trademark infringement, the court holds that Galbreath is judicially estopped from asserting the copyright and trademark infringement claims. As Judge Smith held in his 1997 *Galbreath* opinion, unfair competition claims are dependent upon the success of the underlying copyright infringement and/or trademark infringement claims. Because the latter claims are barred by judicial estoppel, the unfair competition claim must also fail.

### III.  CONCLUSION

For the foregoing reasons, this court concludes that summary judgment for Harden and Sullender on all claims is proper, and consequently, that summary judgment for Galbreath is not proper. A separate and appropriate order will be entered.

DONE this 5th day of October 2001.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE